504 A.2d 1256

## Gilbert LOMBARDO

v.

Carmella DeMARCO, Vincent DeMarco, Marian F. Carbo, Nicholas A. Carbo, John B. Carbo, Paul J. Carbo, Peter A. Carbo, Margaret Carbo Hallman, Joseph Uriani, George Uriani, Rose Uriani Troilo, Carol Stahl, Dorothy Pascale, Rose Carbo, Florence Stansbery, Louis Parente, Jr., Isabella P. Cipollini, Joseph Parente, Marlene P. Lepone, and Lester Parente.

**Appeal of Vincent DeMARCO.**

Superior Court of Pennsylvania.

Argued June 5, 1985.

Filed Dec. 30, 1985.

Reargument Denied Feb. 25, 1986.

Howard R. Golde, Bala Cynwyd, for appellant.

Frank L. Caiola, Norristown, for appellee.

Before WICKERSHAM, BROSKY and TAMILIA, JJ.

WICKERSHAM, Judge:

Vincent DeMarco, one of twenty-one co-owners of three tracts of land in West Norriton Township, Montgomery County, filed this lone appeal from an order directing partition of the tracts.

The real property in question was owned at one time by the parties' common ancestor, Mary DeMarco. After her death in 1960, title to the property passed in equal shares to her seven children: Carmella DeMarco, Vincent DeMarco (appellant herein), Anna Carbo, Mary Uriani, Clara Lombardo, Florence Stansbery, and Rose Parente. Because Rose Parente predeceased her mother, however, Rose's share of the property was divided equally among her six children.[1] Since that time, Anna Carbo, Mary Uriani, and Clara Lombardo have also died, each leaving their respective one-sev-

---

1. Louis Parente, Jr., Isabella Cipollini, Joseph Parente, Marlene Lepone, and Lester Parente are the surviving children of Rose Parente. A sixth child, Anthony Parente, is deceased, and his proportionate share of the property was distributed among four of his siblings.

enth interest to their children.[2]   All of the parties own their respective interests as tenants in common.

On September 29, 1983, Gilbert Lombardo, one of Mary DeMarco's grandchildren and owner of an undivided one-twenty-first interest in the real estate, filed a complaint in equity seeking partition of the property.   He named as defendants the twenty other relatives upon whom interests in the property had passed.   One of those relatives, his uncle Vincent DeMarco, filed preliminary objections to the complaint.   The objections were overruled and various pleadings followed.   On June 22, 1984, the lower court issued a rule upon Mr. DeMarco to show cause why a decree in partition should not be granted after a hearing on July 25, 1984.   That hearing culminated in an order on October 15, 1984, directing partition and specifying the shares going to each of the twenty-one parties.[3]   This order

2.  Rose Carbo, Maryanne Carbo, Nicholas Carbo, John Carbo, Paul Carbo, Peter Carbo, and Margaret Hallman are the children of Anna Carbo.   Joseph Uriani, George Uriani, and Rosalie Troilo are the children of Mary Uriani.   Carol Stahl, Dorothy Pascale, and Gilbert Lombardo are the children of Clara Lombardo.

3.  The order stated in pertinent part:
    AND NOW, this 15th day of October, 1984, after hearing in open court, and upon receipt of Findings of Fact and Conclusions of Law it is
    ORDERED, ADJUDGED and DECREED that partition be made of the lands mentioned and described in the complaint among the parties therein named in proportion to their respective interests therein, as follows:

| | |
|---|---|
| VINCENT DEMARCO | 1/7 |
| JOSEPH URIANI | 1/21 |
| GEORGE URIANI | 1/21 |
| ROSALIE URIANI TROILO | 1/21 |
| NICHOLAS A. CARBO | 1/49 |
| (M.) ROSE CARBO | 1/49 |
| JOHN B. CARBO | 1/49 |
| MARIAN F. CARBO | 1/49 |
| PAUL J. CARBO | 1/49 |
| PETER A. CARBO | 1/49 |
| MARY CARBO HALLMAN | 1/49 |
| CAROL STAHL | 1/21 |
| DOROTHY PASCALE | 1/21 |
| GILBERT LOMBARDO | 1/21 |
| FLORENCE D. STANSBERY | 1/7 |
| CARMELA DEMARCO | 1/7 |

was reduced to judgment on November 9, 1984, whereupon Mr. DeMarco filed this timely appeal.[4] None of the other parties have appealed.

Appellant raises seven issues before us:

1. Did the lower court insure [appellant] an adequate opportunity for discovery?

2. Should the lower court have granted [appellant] a full trial in this case?

3. Should the lower court have permitted cross-examination of a witness regarding matters relating to a title search?

4. Did the plaintiff have an absolute right to partition in this case?

5. Was the order directing partition an unnecessary infringement upon the property rights of [appellant]?

6. Did the plaintiff come before the lower court with "unclean hands?"

| | |
|---|---|
| LOUIS PARENTE, JR. | 1/42 plus 1/168 |
| ISABELLA CIPOLLINI | 1/42 plus 1/168 |
| JOSEPH PARENTE | 1/42 plus 1/168 |
| LESTER PARENTE | 1/42 plus 1/168 |
| MARLENE LEPONE | 1/42 |

**4.** Appellant filed neither exceptions nor a motion for post-trial relief in the lower court. We do not find, however, that on appeal his issues have been waived for the failure to ask for such post-trial relief. Under the Pennsylvania Rules of Civil Procedure, no exceptions may be filed to an order directing partition. Pa.R.C.P. No. 1557. Therefore, he would not be required to file a motion for post-trial relief under Pa.R.C.P. No. 227.1 either. Rather, an appeal may be taken as of right from an order directing partition. Pa.R.A.P. No. 311(a)(6). *See Grubbs v. Dembec,* 241 Pa.Super. 18, 359 A.2d 418 (1976) (rule providing for appeal from a partition action does not mandate an appeal, but makes it optional with the dissatisfied party whether to appeal the order preliminarily, or whether to proceed with the partition action and appeal from the final decree). Since there exists this interlocutory right of appeal from an order directing partition, appellant's subsequent entry of judgment on that order was an unnecessary step in perfecting his appeal. We will ignore this procedural irregularity however, because the notice of appeal was filed well within the 30-day period following the order directing partition. *See* Pa.R.A.P. No. 903(a).

7. Did the lower court properly balance the equities in this case?

Brief for Appellant at 4.

■ The scope of appellate review of a decree in equity is particularly limited and such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Daley v. Hornbaker*, 325 Pa.Super. 172, 472 A.2d 703 (1984); *Lynch v. Hook*, 298 Pa.Super. 27, 444 A.2d 157 (1982). The test is not whether we would have reached the same result on the evidence presented, but whether the judge's conclusion can be reasonably drawn from the evidence. *In re Estate of Tippins*, 487 Pa. 107, 408 A.2d 1377 (1979); *Hoffman v. Gekoski*, 250 Pa.Super. 49, 378 A.2d 447 (1977). Where a reading of the record reasonably can be said to reflect the conclusions reached by the lower court sitting in equity, we cannot substitute our judgment for that of the lower court. *Frowen v. Blank*, 493 Pa. 137, 425 A.2d 412 (1981). The findings of the chancellor will not be reversed unless it appears that he clearly abused his discretion or committed an error of law. *Id.* Where, as here, however, the chancellor merely made conclusory findings, and made no specific findings of the important underlying facts necessary to support the ultimate conclusions, we must make an independent scrutiny of the record to determine whether these underlying facts are present. *Lewkowicz v. Blumish*, 442 Pa. 369, 275 A.2d 69 (1971).

With this limited scope of review in mind, we have reviewed the record and will address each issue seriatim.

■ First, appellant complains that he was not given an adequate opportunity for discovery. Pa.R.C.P. No. 4001 provides that, except in a number of situations not relevant here, discovery is available in any civil action or proceeding at law or in equity. The rules do not establish a timetable for discovery, however, other than that the parties may proceed simultaneously with discovery and they may use methods of discovery in any order. Pa.R.C.P. No. 4007.3. It is the job of the trial court to oversee discovery between the parties and therefore, it is within that court's discretion

to determine the appropriate measures necessary to insure the adequate and prompt discovery of matters allowed by our rules. *Stern v. Vic Snyder, Inc.*, 325 Pa.Super. 423, 473 A.2d 139 (1984).

■ Appellant argues that the thirty-two day period between issuance of the rule and the hearing date was an insufficient time to conduct discovery. We find, however, that appellant's alleged lack of time for what he terms "adequate" discovery was not entirely court-made. Appellant argues that the petition filed on June 22, 1984, resulting in the rule to show cause and the setting of the July 25, 1984 hearing date, indicated that the pleadings had been closed. Consequently, he argues that he had only thirty-two days to pursue discovery. We disagree. Discovery is available to any party in a case long before the pleadings are closed. The only requirement is that the discovery must be in aid of proceedings already commenced, i.e. there is no pre-action discovery. Discovery is even available early in the case if necessary to enable a party to prepare his pleadings, assuming that the action has been commenced and that the party can show that the requested information is relevant. *See generally,* 6 Standard Pennsylvania Practice 2d §§ 34:4, 34:5.

■ The instant complaint was filed on September 29, 1983, signaling the commencement of the case. Appellee's reply to the new matter in appellant's answer was filed on April 3, 1984, signaling an end to the pleadings. *See* Pa.R.C.P. Nos. 1017(a), 1026. Even if appellant did not begin discovery until after the pleadings were closed, a typical but unnecessary practice, he had about three and a half months in which to conduct discovery. We cannot say that this was an unreasonable time in a case such as this, in which there was virtually no dispute over the identity of parties or what interests each had in the real estate in question. Furthermore, appellant does not provide us with what other discoverable information he wanted to obtain; he alleges only that the time was inadequate for him to engage in full and free acquisition of relevant pretrial

information needed by him to fully and fairly prepare his defense. Finally, we note that while appellant complained at the hearing on July 25 about a lack of time for discovery, the record reveals no request by him either during the hearing or preceding the hearing for a continuance so he could have more time for discovery. Without such a request, we can hardly say that the lower court erred in not allowing more time for discovery.

Second, appellant complains that the lower court failed to give him a full trial on the issue of partition. Appellant is correct; he did not get a full trial, but rather a hearing on partition. We are not persuaded, however, that this was error.

Pa.R.C.P. No. 1557 states in pertinent part:

If the court determines that there shall be partition because of a default or admission or after a hearing or trial, the court shall enter an order directing partition which shall set forth the names of all the co-tenants and the nature and extent of their interests in the property.

■ We interpret this rule to clearly allow the lower court to make an order of partition following *one* of four events: a default, an admission, a hearing, or a trial. Assuming no default or admission, either a hearing *or* a trial is appropriate. The lower court herein chose the setting of a hearing in which to hear this case, at which witnesses were presented and testimony was taken. The decision on whether to have a hearing or a trial is discretionary with the trial judge, and we can find no abuse of that discretion herein.

Third, appellant claims error in the lower court's refusal to allow him to cross-examine a witness concerning a material and relevant matter. The witness was a title researcher and the "material and relevant matter" concerned a title search of the real estate done in June 1981. During direct examination, the witness stated in response to a question asked by appellee's counsel, that he had performed two title searches on the property, one in 1981 and one in 1984. Further direct questioning centered on the 1984 search. On cross-examination, appellant's counsel asked for whom the

witness had conducted the 1981 search. Counsel for appellee objected on the grounds of relevancy, but before the judge ruled, the witness answered that the 1981 search had been done for a Mr. Apt. After some additional testimony, the following exchange took place:

[COUNSEL FOR APPELLANT]: Why would Mr. Apt want a title search, and how does it relate to Mr. Lombardo and this hearing?

A. That, I will explain to you.

[COUNSEL FOR APPELLEE]: I object.

THE COURT: He has no way of knowing why somebody else did something.

[COUNSEL FOR APPELLANT]:

Q. Why is it that Mr. Lombardo found out about this title search, when, in fact, you did it for Mr. Apt?

[COUNSEL FOR APPELLEE]: I object to that question.

THE COURT: How does he know how Mr. Lombardo found out about it?

[COUNSEL FOR APPELLANT]: Is the objection overruled then, or sustained?

THE COURT: Objection sustained.

[COUNSEL FOR APPELLANT]: All right.

N.T. at 41–42. Appellant's counsel then dropped this line of questioning and went on to the subject of the 1984 search.

■ Control of the scope and manner of cross-examination are within the sound discretion of the trial court and the court's ruling thereon will not be reversed on appeal absent a clear abuse of that discretion or an error of law. *Commonwealth v. Orlowski,* 332 Pa.Super. 600, 481 A.2d 952 (1984); *Commonwealth v. Brown,* 329 Pa.Super. 85, 477 A.2d 1364 (1984); *Kemp v. Qualls,* 326 Pa.Super. 319, 473 A.2d 1369 (1984). Furthermore, even if a ruling is erroneous, the error is not grounds for reversal unless it results in apparent injury. *Commonwealth v. Hinton,* 269 Pa.Super. 43, 409 A.2d 54 (1979). After examining the quoted testimony, however, we find neither abuse of discre-

tion nor error of law. Why a third party, unrelated to the instant litigation, wanted a title search done of the property three years earlier is possibly an interesting question, but it is hardly relevant to the 1984 title search done for this litigation. Furthermore, the witness could have no first-hand knowledge of why Mr. Apt wanted the title search; he would only be able to guess at the reason, or at the most, repeat what, if anything, Mr. Apt told him. Therefore, we find no error in the lower court's ruling.

The remaining four issues deal more specifically with the granting of the order of partition. Appellant argues that appellee had no absolute right to partition; that the order was an unnecessary infringement upon appellant's property rights; that appellee had "unclean hands"; and that the court did not properly balance the equities of the case. We find all these issues to be meritless.

"Partition is a possessory action; its purpose and effect being to give to each of a number of joint owners the possession he is entitled to of his share in severalty." *Fry v. Stetson*, 370 Pa. 132, 135, 87 A.2d 305, 307 (1952), *quoting Johnson v. Gaul*, 228 Pa. 75, 77 A. 399 (1910). It is an adversary action and its proceedings are compulsory. *Seiders v. Giles*, 141 Pa. 93, 21 A. 514 (1891). The rule is that the right to partition is an incident of a tenancy in common, and an absolute right. *Shoup v. Shoup*, 469 Pa. 165, 364 A.2d 1319 (1976); *Caldwell v. Snyder*, 178 Pa. 420, 35 A. 996 (1896). *See also, Lykiardopoulos v. Lykiardopoulos*, 453 Pa. 290, 309 A.2d 548 (1973) (partition is normally a matter of right); *Hyatt v. Hyatt*, 273 Pa.Super. 435, 417 A.2d 726 (1979) (appellant had an absolute right to seek partition).

Appellant cites a lower court case, *Duffy v. Duffy*, 81 D. & C. 366 (C.P.Mont.1951), in which it was stated that partition, like all equitable relief, is a matter of discretion in the chancellor and when a case is presented where equity would demand that partition be refused, the chancellor can do so. While we need not follow the *Duffy* decision, of course, we are not in total disagreement with its holding.

We can envision a possible refusal to partition under certain circumstances, e.g., where the rules of civil procedure are not followed, where the parties are not all before the court, where the legal title to the land is unclear, where the interests of each party cannot be determined, where there was a waiver of, or an agreement concerning the right to partition, or where a decree in partition would violate public policy. *See, e.g., Brown v. Lutheran Church,* 23 Pa. 495 (1854) (partition of a burial ground denied on ground of public policy). The instant case, however, is free of these defects, and it is hardly one in which partition violates public policy. Appellee complied with rules concerning partition. He also introduced testimony as to the nature of the interest of each of the twenty-one parties and proved that the property was held by the parties as tenants in common. All parties but appellant, either through expression or inaction, appeared to be in agreement with appellee's petition. The request for partition was properly made by appellee, who had a right to obtain that relief. This is not a case in which the equities demand that partition be refused.

Nor do we agree that the order of partition was an unnecessary infringement upon appellant's property rights. While we sympathize with appellant, an elderly man who, as his attorney states, wants only "to be left alone and to enjoy his property," a co-tenant does not possess the right to tie the hands of a fellow co-tenant from realizing his undivided property interest.

> The right to have partition of property is one of the longstanding rules of property ownership under which persons acquire and continue to hold ownership of real estate in common with other persons, and its existence and the right to resort to it are necessary to prevent such ownership from becoming, in many cases, entirely useless and burdensome, for without it, one tenant in common could, by his unwillingness or inability to act, entirely deprive his cotenants of the benefits of ownership.

23 Standard Pennsylvania Practice 2d § 122:15 (footnote omitted). Appellant admits that there is no appellate au-

thority in Pennsylvania to the effect that severe hardship, inconvenience, or pecuniary or other injury to a co-tenant (none of which was proved by appellant below) would be sufficient to prevent partition of real property. We decline to make such a rule at this time.

Appellant also argues that because appellee came before the court with "unclean hands," the lower court should not have granted the equitable relief of partition.[5] It is well-established that one who seeks equitable relief must enter the courtroom with clean hands. *Harbor Marine Co. v. Nolan*, 244 Pa.Super. 102, 366 A.2d 936 (1976). The application of the clean hands doctrine to deny such relief is within the discretion of the chancellor, and in exercising his discretion the chancellor is free not to apply the doctrine if a consideration of the entire record convinces him that an inequitable result will be reached by applying it. *Stauffer v. Stauffer*, 465 Pa. 558, 351 A.2d 236 (1976).

After a careful reading of the record, however, we do not believe that appellee's hands were unclean. Appellant suggests that all twenty defendants were not advised of this proceeding. The record clearly shows, however, that appellee sent the required notice of the lawsuit to all parties. Appellee's assertion that all parties except appellant were in agreement that partition and sale should take place was essentially correct. At the hearing, the legal representative for two of the defendants stated that while they did not necessarily agree that the property should be sold, they did not oppose partition, which is the only real issue at this stage of the case. We do not consider the above to rise to the level of purposeful misrepresentation to the court. We view in the same manner the testimony by appellee's witness concerning the June 1984 title search. While we agree that appellee should not have stated in

---

5. We note that there is appellate caselaw which states that although actions in partition are brought in equity, actions for sale and division of proceeds under 68 P.S. § 501 may not be avoided by such equitable defenses such as unclean hands. *Shoup v. Shoup*, 469 Pa. 165, 364 A.2d 1319 (1976). Since there is no statute involved in this case, however, we will address appellant's unclean hands issue.

502

answer to interrogatories filed in April 1984, that he had completed an exhaustive title search, such a search was completed in June 1984, one month prior to the hearing. We see no harm to appellant by this misstatement, especially since the title and the shares of ownership were never seriously in question.

■    Finally, we are unconvinced that the lower court failed to properly balance the equities in this case.  While the court's opinion is brief, we have carefully reviewed the record and the applicable law, and we have considered appellant's well-stated arguments.  We have concluded that the lower court's direction of partition of the property is supported by the evidence.  Because there was neither abuse of discretion nor error of law, we affirm the order of partition.

Order of partition affirmed.